UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA WALLIS, )<br>As Administratrix of the )<br>Estate of T. Jeffrey Healey, )<br>and next best friend, )<br>    Plaintiff )<br>)<br>v. )<br>)<br>THOMAS BARNEY, KEVIN )<br>JOHANSON, STEVEN HAIR, )<br>MICHAEL LAHAIR, ANA DIAZ, )<br>FRANCIS BARTLEY, and )<br>CITY OF WORCESTER, )<br>    Defendants ) | C.A. NO. 03-11318(FDS) |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now come Thomas Barney, Kevin Johanson, Steven Hair, Michael Lahair, Ana Diaz, Francis Bartley, and the City of Worcester ("the Defendants") in the above-captioned matter to move this Court, pursuant to Fed. R. Civ. P. Rule 56(b), to grant judgment in their favor. As grounds for this motion, Defendants state that there is no evidence that Defendants knew or had reason to know from observations of Plaintiff's decedent, T. Jeffrey Healey ("Mr. Healey"), that he was suicidal. Plaintiff's evidence is, therefore, insufficient to establish an essential element of her claim, entitling Defendants to judgment as a matter of law. In support of this motion, Defendants rely on the attached affidavits and the within statement of undisputed material facts and memorandum of law.

I.    STATEMENT OF UNDISPUTED MATERIAL FACTS.

    1.    On or about September 5, 2001, Mr. Healey was arrested by Worcester Police Officers Gregory Joinville and Glenn Stout and charged with breaking and entering of a motor vehicle in the night time with the intent to commit a felony therein, disturbing the peace, resisting arrest, and larceny under $250.00. Following his arrest, Mr. Healey was transported to

the Worcester Police Department ("WPD") for booking. (Plaintiff's Second Amended Complaint, ¶ 14.)

2. Following the booking, Mr. Healey was transported to the hospital by Officer Thomas Barney for treatment for a cut on his chin, but, at the hospital, Mr. Healey refused treatment. Officer Barney transported Mr. Healey back to the WPD and placed him in cell number 3. (Plaintiff's Second Amended Complaint, ¶ 15; Affidavit of Thomas Barney, ¶ 3.)

3. After returning to the WPD, Officer Barney periodically checked Mr. Healey in his cell; the last check prior to his death occurred at approximately 0600 hours. (Affidavit of Thomas Barney, ¶ 4.)

4. Immediately after the 0600 hours cell check, Officer Barney left the WPD to pick up the prisoners' breakfasts. (Affidavit of Thomas Barney, ¶ 5.)

5. Officer Barney returned to the WPD approximately fifteen to twenty (15 to 20) minutes later with the prisoners' breakfasts. He stored his gun and immediately began delivering breakfasts. (Affidavit of Thomas Barney, ¶ 6.)

6. When Officer Barney got to Mr. Healey's cell, he observed Mr. Healey sitting on the toilet with something around his neck. Officer Barney alerted his fellow officers and unlocked the cell. The officers detached the string and placed Mr. Healey on the floor. Officer Barney then went to call a dispatcher to request an ambulance and he notified the WPD Service Division sergeant while two of his fellow officers performed CPR on Mr. Healey. (Affidavit of Thomas Barney, ¶ 7; Affidavit of Kevin Johanson, ¶ 6.)

7. While the officers performed CPR on Mr. Healey, they detected a faint pulse. The officers performed CPR until the paramedics arrived and took over a short time later. (Affidavit of Kevin Johanson, ¶ 6; Affidavit of Thomas Barney, ¶ 8.)

8. Mr. Healey was transported to the hospital via ambulance. Officer Barney rode in the ambulance to the hospital. Mr. Healey was pronounced dead at the hospital. (Affidavit of Thomas Barney, ¶ 8.)

9. Despite attempts to revive him, Mr. Healey died of strangulation on September 5, 2001. (Plaintiff's Second Amended Complaint, ¶ 24.)

10. At no time during the officers' observations of Mr. Healey did he make any statements about wanting to harm himself or commit suicide. (Affidavits of Thomas Barney, Kevin Johanson, Steven Hair, Michael Lahair, Ana Diaz, and Francis Bartley.)

11. At no time during the officers' observations of Mr. Healey did he behave in such a way that would have led the officers to believe that he was suicidal. (Affidavits of Thomas Barney, Kevin Johanson, Steven Hair, Michael Lahair, Ana Diaz and Francis Bartley.)

II.     STANDARD OF REVIEW OF MOTION FOR SUMMARY JUDGMENT.

Rule 56 of the Federal Rules of Civil Procedure permits the Court to grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding the motion, the court must view "the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995).  The moving party must demonstrate an absence of evidence supporting the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The opposing party must then set forth specific facts showing that there is a genuine issue of material fact, and may not rest on the allegations or denials of the pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), or rely upon "improbable inferences" and "unsupported speculation" to establish any element essential to his or her case.  Goldman v. First National Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

III.     ARGUMENT.

     A.     Plaintiff Cannot Show That The Police Officer Defendants Were Deliberately Indifferent To An Unusually Strong Risk Of Suicide, And, Accordingly, Summary Judgment Should Be Granted In Defendants' Favor.

Count I of Plaintiff's Second Amended Complaint is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment, alleging a violation of civil rights.  Specifically, Plaintiff alleges that Defendants were "reckless and callously indifferent" to Plaintiff's decedent's "right to be secure in his life and person and to proper medical care while confined pursuant to state authority."  (Plaintiff's Second Amended Complaint, ¶ 27.)  Plaintiff claims further that

3

Defendants' alleged actions proximately caused Plaintiff's decedent's suicide. (Plaintiff's Second Amended Complaint, ¶ 28.) Plaintiff is presumably alleging a violation of the Eighth Amendment to the United States Constitution,[1] which the Supreme Court has held prohibits deliberate indifference to the "serious medical needs" of an inmate, as such conduct constitutes infliction of cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102, 106 (1976). The First Circuit has extended the prohibition on deliberate indifference to "serious medical needs" to include "deliberate indifference to an inmate's serious mental health and safety needs." Torraco, 923 F.2d at 234.

It is well-settled law that "to state a claim under [42 U.S.C.] § 1983, a plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). Defendants do not dispute that they were acting under color of law at all times relevant hereto. Defendants do, however, dispute that they violated a right protected by the Constitution or laws of the United States. "[P]olice officers violate the fourteenth amendment due process rights of a detainee if they display a deliberate indifference to the unusually strong risk that a detainee will commit suicide." Bowen v. City of Manchester, 966 F.2d 13, 16 (1st Cir. 1992) (citations omitted). The "deliberate indifference" standard is defined as follows:

> The "deliberate indifference" standard means <u>more than simple negligence</u>. [The First Circuit has] held … that a plaintiff may establish deliberate indifference in a prison suicide case by showing (1) an unusually serious risk of harm (self-inflicted harm, in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk. The risk, the knowledge, and the failure to do the obvious, taken together, must show that the defendant is "deliberately indifferent" to the harm that follows.

---

[1] "The eighth amendment applies to the states through the fourteenth amendment." Torraco v. Maloney, 923 F.2d 231, n.3 (1st Cir. 1991).

4

Id. at 17 (citing Manarite v. Springfield, 957 F.2d 953, 956 (1st Cir. 1992)) (emphasis added). Moreover, "[a] finding of deliberate indifference requires a strong likelihood, rather than a mere possibility, that self-infliction of harm will occur." Torraco, 923 F.2d at 234. Finally, "[the Supreme] Court [has] held that deliberate indifference is akin to criminal recklessness and set a subjective standard for liability." Stewart v. Waldo County, No. 04-24-B-W, 2004 WL 2397403, at *6 (D.Me. Oct. 25, 2004) (citing Farmer v. Brennan, 511 U.S. 825, 837-40 (1994)). The Farmer court stated further that:

> [A] prison official cannot be found liable … unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference…. [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot … be condemned as the infliction of [cruel and unusual] punishment.

Farmer, 511 U.S. at 837-38.

In the case at bar, Plaintiff makes the following claims:

1. Defendants should have recognized that Mr. Healey's behavior "indicated total disregard for his physical and mental well being." (Plaintiff's Second Amended Complaint, ¶ 16.)

2. Defendants should have known that Mr. Healey was a suicide risk "by refusing to accept medical care and erratic behavior." (Plaintiff's Second Amended Complaint, ¶ 17.)

3. Defendants were "on notice that Healey suffered from mental disabilities." (Plaintiff's Second Amended Complaint, ¶ 17.)

4. Defendants permitted Mr. Healey "to remain in an unmonitored cell not within plain sight and sound of defendants with an item, which in common knowledge is used to commit the act of suicide, to wit, a string belt from his sweat pants." (Plaintiff's Second Amended Complaint, ¶ 18.)

5. "Defendants failed to provide regular and continuous observation and supervision and control of decedent's activities." (Plaintiff's Second Amended Complaint, ¶ 19.)

6. "Defendants left decedent unattended and unwatched for long periods of time. Plaintiff's decedent's cell was not physically or visibly checked by defendants as required under a reasonable standard of care pursuant to G.L. c. 40 § 36B." (Plaintiff's Second Amended Complaint, ¶ 20.)[2]

7. "Defendants failed to use available video and audio monitoring system." (Plaintiff's Second Amended Complaint, ¶ 21.)

All of the foregoing factual allegations are without support and most of them are inaccurate. There is no evidence whatsoever that Mr. Healey posed a risk of suicide. To the contrary, the affidavits filed herewith demonstrate that none of the police officers that had contact with Mr. Healey prior to his suicide had any indication, either from Mr. Healey's behavior or from statements made by Mr. Healey, that Mr. Healey was a suicide risk. Moreover, the Affidavit of Michael Motyka states that, according to the statewide CJIS system, Mr. Healey was not at risk of committing suicide while in custody. There is simply no evidence that Mr. Healey posed a suicide risk, let alone, the requisite evidence that Mr. Healey posed an unusually strong risk of suicide. Lastly, the Affidavit of Thomas Barney demonstrates that Mr. Healey was monitored via periodic cell checks, including one at 6:00 a.m. which was only twenty (20) minutes prior to Mr. Healey being discovered with a string around his neck.

Since the test for deliberate indifference is a subjective one, it follows that the police officer Defendants cannot be found liable because they were not aware of, nor did they disregard, an excessive risk to Mr. Healey's health and safety. See Farmer, 511 U.S. at 837-38. Moreover, while the police officers' failure to remove the string from Mr. Healey's sweat pants could arguably constitute a failure to alleviate a significant risk of harm, there is no evidence of the requisite knowledge of an unusually serious risk of harm on the part of any of the police

---

[2] Assuming, arguendo, that Defendants violated G.L. c. 40, § 36B, such a violation would not support a § 1983 claim, as a violation of state law, even a bad faith violation of state law, is not inherently sufficient to support a § 1983 claim. See Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997); see Amsden v. Moran, 904 F.2d 748, 757 (1st Cir. 1990).

6

officers.  And, once again, "a finding of deliberate indifference to an inmate's need for safety requires more than a showing of negligence."  Torraco, 923 F.2d at 236.  Accordingly, there can be no finding of deliberate indifference on the part of the police officer Defendants, and judgment should enter in their favor as to Count I of Plaintiff's Second Amended Complaint.

   B. <u>Alternatively, The Police Officer Defendants Are Entitled To Qualified Immunity From Liability, And, Therefore, Summary Judgment Should Enter In Their Favor</u>.

  In the event that the Court does not grant summary judgment in the police officer Defendants' favor on the grounds that Plaintiff cannot establish that they were deliberately indifferent to an unusually strong risk of suicide on the part of Plaintiff's decedent, the police officer Defendants state that they are entitled to qualified immunity from liability as to Count I of Plaintiff's Second Amended Complaint.  The qualified immunity inquiry turns on whether an objective officer in the police officer Defendants' position would have reasonably believed that his or her conduct amounted to "deliberate indifference."  See Bowen, 966 F.2d at 17.  As stated above, "a plaintiff establishes deliberate indifference in a prison suicide case by showing (1) an unusually serious risk of harm (self-inflicted harm, in a suicide case), (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk."  Id. (citing Manarite, 957 F.2d at 956).  In the present action, where there is no evidence that Plaintiff's decedent posed a suicide risk, the police officer Defendants are entitled to qualified immunity.

  There is no evidence that the police officer Defendants had actual knowledge or willfully blinded themselves to an unusually serious risk of self-inflicted harm, and, accordingly, there can be no evidence that the police officer Defendants failed to take steps to address the known, serious risk.  Once again, the affidavits of the police officer Defendants filed herewith demonstrate that they did not observe any behavior or hear any statements that would have led

7

them to believe that Mr. Healey was a suicide risk.  Moreover, the statewide CJIS system did not have Mr. Healey listed as a suicide risk while in custody.  Mr. Healey was also checked periodically in his cell, including a check just twenty (20) minutes before he was discovered with a string around his neck.  Accordingly, the police officer Defendants' conduct cannot be deemed to have violated clearly established law and therefore they are entitled to qualified immunity from liability as to Count I of Plaintiff's Second Amended Complaint.

    C.     <u>Summary Judgment Should Be Granted In Defendant City Of Worcester's Favor On Count II Of Plaintiff's Second Amended Complaint Because There Is No Evidence That The City Knew, Or Should Have Known, That Plaintiff's Decedent Was Suicidal</u>.

Plaintiff invokes supplemental jurisdiction, pursuant to 28 U.S.C. § 1331, based on allegations that there has been a violation of rights founded substantially on federal law.  This Court should exercise its discretion to grant supplemental jurisdiction over the state law claim because to do so would be in the interests of judicial economy.  (See <u>Vera-Lozano v. Int'l Broadcasting</u>, 50 F.3d 67, 70 (1st Cir. 1995)).  Moreover, because the underlying incident occurred nearly five (5) years ago, a final disposition of this matter would be in the best interests of all parties involved, as well as the Court.

Count II of Plaintiff's Second Amended Complaint sets forth a claim for wrongful death against Defendant City of Worcester ("the City") pursuant to Mass. Gen. Laws c. 229.  The Massachusetts Wrongful Death Statute sets out a cause of action against "[a] person … who by his negligence causes the death of a person …."  Mass. Gen. Laws c. 229, § 2.  Summary judgment should be granted in the City's favor on the grounds that there is no evidence of the City's negligence, that is, that the City knew, or should have known Mr. Healey was suicidal.  While it is true that summary judgment is typically disfavored where knowledge or state of mind is at issue, <u>Quincy Mut. Fire Ins. Co. v. Abernathy</u>, 393 Mass. 81, 86 (1984), judgment should be

8

granted where no rational view of the evidence warrants a finding that the City knew or should have known that the decedent was a suicide risk.  See Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983).

"In cases that have addressed the issue of the liability of a jailor [such as the City] for the suicide of one in [its] custody, most have required that there be evidence that the defendant knew, or had reason to know, of the plaintiff's suicidal tendency." Slaven v. City of Salem, 386 Mass. 885, 888 (1982).  The examples of evidence of a suicidal tendency cited in Slaven include the following: (1) a deceased made repeated statements that he intended to kill himself; (2) defendants aware of deceased's known and expressed suicidal tendencies; (3) enough evidence to raise issues of fact for jury to decide whether defendant knew, or should have known, of plaintiff's condition; and (4) custodial officials warned of deceased's suicidal tendencies.  Id.  In the present action, the Defendants have established through affidavits filed herewith that none of the various police officers who had any contact with the decedent had known or should have known that the decedent was a suicide risk.  Plaintiff cannot establish otherwise.

Plaintiff will likely contend that the mere fact that Plaintiff's decedent was wearing a draw string in his sweat pants is evidence of negligence.  However, that fact alone is not material "because the fact could not aid in establishing negligence without at least a preliminary finding that the city knew, or should have known, that the deceased was a suicidal risk." Id. at 889.  In Slaven, the Court found that "[t]here is nothing in the record to show any duty to remove a belt from all prisoners as a matter of due care, or as a matter of regulation, or standard practice." Id. at n.3.  Thus, the Court held, "[u]ntil the city's duty is established, by the facts or otherwise, whether the prisoner was wearing a belt at the time of his arrest is immaterial." Id. at 890.

In light of the foregoing, no rational view of the evidence before this Court would warrant a finding that Defendant City of Worcester was negligent.  Accordingly, summary judgment must be granted in Defendant City of Worcester's favor as to Count II of Plaintiff's Second Amended Complaint.

IV.     CONCLUSION.

For the foregoing reasons, and in light of the uncontroverted fact that there is no evidence whatsoever that the Defendants knew or had reason to know that Plaintiff's decedent was a suicide risk, summary judgment should be granted in Defendants' favor as to Counts I and II of Plaintiff's Second Amended Complaint.

> Respectfully submitted,
>
> Thomas Barney, Kevin Johanson,
> Steven Hair, Michael Lahair, Ana Diaz,
> Francis Bartley, and City of Worcester,
>
> By their attorneys,
>
> David M. Moore
> City Solicitor
>
>
> /s/ Janet J. McGuiggan
> Assistant City Solicitor
> City of Worcester
> City Hall, Room 301
> 455 Main Street
> Worcester, MA 01608
> (508) 799-1161
> BBO #630013

CERTIFICATE OF SERVICE

      I, Janet J. McGuiggan, hereby certify that the within document filed through the ECF electronic filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and a paper copy will be served upon Plaintiff by mailing a copy of the same via first-class mail, postage prepaid, to Theodore H. Goguen, Jr., Esquire, Goguen, McLaughlin, Richards & Mahaney, The Harriet Beecher Stowe House, 2 Pleasant Street, South Natick, MA 01760 on this 1st day of May, 1006.

                                                /s/ Janet J. McGuiggan