UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA WALLIS, As Administratrix of the ESTATE OF T. JEFFREY HEALEY, and next best friend. <br> *Plaintiff* <br><br> v. <br><br> CITY OF WORCESTER, OFFICERS, MICHAEL LAHAIR, THOMAS BARNEY, KEVIN JOHANSON, STEVEN HAIR, ANNA DIAZ, FRANCIS BARTLEY AND THOMAS BARNEY IN THEIR CAPACITY AS POLICE OFFICERS OF THE CITY OF WORCESTER AND IN THEIR INDIVIDUAL CAPACITY <br> *Defendants* | CIVIL ACTION <br> DOCKET NO.: 03-11318-FDS |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES THE PLAINTIFF, Patricia Wallis, as Administratrix of the Estate of T. Jeffery Healey, and next best friend, (hereinafter "Plaintiff"), and hereby submits the within Memorandum of Law in support of her Opposition to Defendants' Motion For Summary Judgment pursuant to Fed.R.Civ.P. 56. In support of Plaintiff's opposition, the Plaintiff attaches and incorporates herein the Affidavits of Patricia Wallis and Attorney Joseph M. Mahaney.

I.  **INTRODUCTION**

Plaintiff by and through the undersigned counsel filed this civil rights lawsuit on behalf of her son, T. Jeffrey Healey, (hereinafter "Mr. Healey") a twenty three year old male who committed suicide while detained in police custody in City of Worcester Police Department. Defendants knew or reasonably should have known of the suicidal

1

tendencies of T. Jeffrey Healey. Despite their knowledge of Mr. Healey's propensity for suicide Defendants detained an *inebriated* Mr. Healey in an *unmonitored cell* in the Worcester Police Department. (*See* Exhibit "C" p. 10). Defendants, furthermore, failed to remove the string from Mr. Healey's sweat pants which Mr. Healey subsequently used to asphyxiate himself by hanging himself.

Plaintiff's claims include a violation of 42 U.S.C. § 1983 and a cause of action for wrongful death brought under the Massachusetts General Laws.

II. **PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

For the purposes of the Defendants' Motion For Summary Judgment, the Plaintiff responds to Defendants' statement of Relevant Facts contained in their memorandum as follows[1]:

1. Plaintiff admits to the facts contained in paragraph 1 of Defendants' statement of facts. The Plaintiff, however, adds that immediately following the booking Mr. Healey was transported to UMASS Memorial Hospital in Worcester, Massachusetts to be examined for serious injuries sustained during the arrest by Officers Gregory Joinville and Glenn Stout. (*See* Second Amended Complaint ¶ 15).

2. Plaintiff admits that Mr. Healey was transported to the hospital, but lacks sufficient knowledge to admit or deny that Defendant, Thomas Barney transported Mr. Healey to the hospital. Plaintiff admits Mr. Healey was placed in cell number 3 after his return from the hospital.

3. Plaintiff is without sufficient knowledge to admit or deny the statement of fact in paragraph number 3.

---

[1] Defendants rely solely on the Affidavits signed by the Defendants simply denying Plaintiff's allegations. Defendants' Affidavits, however, fail to assert that the averments contained therein are based upon the individuals' personal knowledge. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed.R.Civ.P. 56(e). An affidavit denying plaintiff's allegations without supporting documentation creates nothing but an issue of fact that needs to go to trial.

2

4. Plaintiff is without sufficient knowledge to admit or deny the statement of fact in paragraph number 4.

5. Plaintiff is without sufficient knowledge to admit or deny the statement of fact in paragraph number 5.

6. Plaintiff is without sufficient knowledge to admit or deny the statement of fact in paragraph number 6. Plaintiff, however, responds that as....

7. Plaintiff is without sufficient knowledge to admit or deny the statement of fact in paragraph number 7.

8. Plaintiff is without sufficient knowledge to admit or deny the statement of fact in paragraph number 8.

9. Admitted. Mr. Healey's death certificate, however, indicates that cause of death was asphyxia. (*See* Exhibit "D").

10. Plaintiff is without sufficient knowledge to admit or deny the statement of fact in paragraph number 10.

11. Denied. Mr. Healey's mental state, refusal of medical treatment for severe injuries, and the Defendants' familiarity with Mr. Healey put or should reasonably have put Defendants on notice of his suicidal tendencies. (*See* Exhibit "A" and Exhibit "B").

IV. **ARGUMENT**

    A. **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beatty v. WMATA*, 860 F.2d 1117, 1120-21 (D.C. Cir. 1988). The party seeking summary judgment carries the initial burden of demonstrating the absence of any genuinely disputed issue of material fact. *See Beatty*, 860 F.2d at 1122. The Court views

3

the record and evidence on summary judgment in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Levy v. FDIC*, 7 F.3d 1054, 1056 (1st. Cir. 1993); *Startmore v. Goodbody*, 866 F.2d 189, 191 (6th Cir. 1989) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 487 (1986)). Once the moving party has presented evidence of the absence of a genuine issue, the nonmoving party must respond by "placing at least one material fact in dispute." *FDIC v. Anchor Properties*, 13 F.3d 27, 30 (1st. Cir. 1994) citing *Darr v. Muratore*, 8 F.3d 854, 859 (1st. Cir. 1993).

"It is axiomatic that Rule 56 must be used carefully so as not improperly to foreclose trial." *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Courts should be especially cautious before entering summary judgment where, as here, liability is likely to turn on factual questions about the purpose and effects of conduct whose existence is not disputed. *See, e.g., Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482-86 (1992).

**B.    PLAINTIFF'S ACTION PURSUANT TO 42 U.S.C. § 1983 IS VIABLE AND RAISES GENUINE ISSUES OF MATERIAL FACT.**

Plaintiff's Second Amended Complaint sets forth a proper and viable civil rights claim against the Defendants pursuant to 42 U.S.C. § 1983 and raises genuine issues of material fact which should preclude the granting of Defendants Motion for Summary Judgment.

Section 1983 of Title 42 of the United States Code states:
Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or

4

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[2]

To assert a cause of action under section 1983, plaintiff must allege each of the following three elements: First, that the conduct complained of was committed by a person acting under color of state law; Second, that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and, Third, that the defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff. *Parratt v. Taylor*, 451 U.S. 527 (1981); see also *Martinez-Velez v. Simonet*, 919 F.2d 808 (1st Cir. 1990).

Defendants were at all relevant times, police officers with the City of Worcester Police Department thus satisfying the element that the conduct complained of was committed by a person acting under color of state law. (*See* Second Amended Complaint ¶ 26; see also Defendants' Motion p. 4 and accompanying affidavits). Defendants' conduct deprived Mr. Healey of his federally protected rights, specifically Mr. Healey's rights, privileges or immunities secured by the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference to Mr. Healey's serious medical needs, to wit, his suicidal tendencies, by failing to comply with the Massachusetts General Laws and policies and procedures in detaining suicidal inmates. Plaintiff, therefore satisfied the second element of her 1983 claim. *See* Exhibit "A", Exhibit "B", Exhibit "C", and Second Amended Complaint ¶ 27. Plaintiff also alleges that Defendants' conduct was the direct result or proximate cause of Healey's death, which satisfies the third element of her 1983 claim. See Second Amended Complaint ¶ 28.

---

[2] Section 1983 of Title 42 of the United States Code; *Gonzaga Univ. v. Doe*, 122 S. Ct. 2268 (2002).

5

A genuine issue here is whether the Defendants violated Mr. Healey's Fourteenth Amendment right to be secure in his life and person and to proper medical care while confined pursuant to state authority. *Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir. 1991). Police officers violate the Fourteenth Amendment rights of a detainee if they display a deliberate indifference to the unusually strong risk that a detainee will commit suicide. *Bowen v. City of Manchester*, 966 F2d 13, 16 (1st Cir. 1992). The key to deliberate indifference in a prison suicide case is whether the defendants knew, or reasonably should have known, of the detainee's suicidal tendencies. *Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir. 1991).

As set forth herein, Plaintiff asserts that the Defendants knew, or reasonably should have known of Mr. Healey's suicidal tendencies. (*See* Affidavit of Patricia Wallis, Affidavit of Joseph Mahaney). Plaintiff further states that Defendants failure to comply with proper procedure and the Massachusetts General Laws regarding the detention of suicidal detainees violated Mr. Healey's federally protected rights. (*See* Affidavit of Patricia Wallis, Affidavit of Joseph Mahaney, and Second Amended Complaint ¶ 22).

Based upon the foregoing Plaintiff's cause of action pursuant to 42 U.S.C. § 1983 has been sufficiently established. This Court should deny Defendants' Motion as there are genuine issues of material fact such as whether Defendants knew or reasonably should have known of Mr. Healey's propensity for suicide, which warrant a jury trial.

C. <u>DEFENDANTS KNEW OR SHOULD HAVE KNOWN OF MR. HEALEY'S PROCLIVITY FOR SUICIDE AND ACTED WITH DELIBERATE INDIFFERENCE VIOLATING MR. HEALEY'S CIVIL RIGHTS.</u>

Defendants' Motion for Summary Judgment should be denied because the Defendants knew or reasonably should have known that Mr. Healey was a suicide risk

6

and Defendants acted deliberately indifferent to that risk resulting in a violation of Mr. Healey's civil rights.

To prevail in a custodial suicide case brought pursuant to § 1983, plaintiff must show that jail officials displayed "deliberate indifference" to the substantial risk of an inmate's suicide. *Torraco v. Maloney*, 923 F.2d 231 (1st Cir. 1991) *see also, Popham v. City of Talladega*, 908 F.2d 1561 (11th Cir. 1990). The First Circuit Court of Appeals stressed that the key to deliberate indifference in a prison suicide case is whether the defendants knew, or *reasonably should have known*, of the detainee's suicidal tendencies. *Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir. 1991). *(emphasis supplied)*. The First Circuit Court of Appeals has also previously explained: "when prison officials intentionally place prisoners in dangerous surroundings, when they intentionally ignore prisoners' serious medical needs, or when they are "deliberately indifferent" either to prisoners' health or safety, they violate the Constitution. *Elliott v. Cheshire County*, 940 F.2d 7 (1st Cir. 1991). Different courts have described "deliberate indifference" in various ways, but, at least, that term encompasses acts or omissions so dangerous (in respect to health or safety) that a defendant's "knowledge of a large . . . risk can be inferred." *Id.*

This civil action presents numerous genuine issues of material fact which should preclude the granting of Defendants Motion for Summary Judgment. Based upon the following facts which surround this case the Defendants should be found to have reasonably known of Mr. Healey's suicidal tendencies:

    1.    In the summer of 2001 Plaintiff, Patricia Wallis, the mother of Mr. Healey, contacted the Worcester Police Department in an attempt to obtain help locating

7

detectives of the Worcester Police Department in their attempts to locate Mr. Healey before he harmed himself. (*See* Exhibit "B"). One of the detectives was known as "Detective T.J.". (*See* Exhibit "B"). After several hours of searching for Mr. Healey to no avail the detectives dropped Mr. Newton off at home. Mr. Healey returned to Mr. Newton's home later that same evening. (*See* Exhibit "B"). After Mr. Healey's suicide Detective T.J. and other officers came to Mr. Newton's home to speak with him about Mr. Healey's suicide. Mr. Newton told the police "I spoke to you people about this two weeks ago." (*See* Exhibit "B").

3. On September 5, 2001 Mr. Healey was severely injured as a result of being apprehended by officers of the Worcester Police Department. Defendant Thomas Barney stated that he observed blood on Mr. Healey's face and chin. (*See* Exhibit "C"). Mr. Healey's injuries were so severe that Defendant, Officer Thomas Barney transported Mr. Healey to the emergency room at UMASS Memorial. (*See* Affidavit of Thomas Barney attached to Defendants' Motion and Exhibit "C" attached hereto). At the emergency room Dr. Rene Hipona observed Mr. Healey. (*See* Exhibit "C"). Mr. Healey refused medical treatment for a severe laceration. *Id.* Refusing medical treatment for the severe injury Mr. Healey had sustained exhibits total disregard for his own physical and mental well being. Mr. Healey was transported back to the Worcester Police department and placed in an unmonitored holding cell. (*See* Affidavit of Thomas Barney attached to Defendants' Motion and Exhibit "C" attached hereto). An individual being held in the cell next to Mr. Healey's stated "that he heard Healey complaining about

his bone coming through his chin and that he wanted medical assistance."[3] (See Exhibit "C" p. 10). Furthermore, Detective McKiernon later informed Plaintiff that her son, Mr. Healey had hysterically screaming and crying while held in the cell to be allowed to make a phone call, but was denied that right. (See Exhibit "A").

4.  The Special Commission to Investigate Suicide in Municipal Detention Centers found the following: (a) 73.6% of the reported suicide victims had been intoxicated to some extent when brought into the police station. (A toxicology test was performed as part of the autopsy on Mr. Healey subsequent to his suicide. (See Exhibit "D"). The toxicology report indicated that Mr. Healey's blood contained cocaine, cocaine metabolites, and methadone. Id.); (b) 97.1% of the reported suicide victims had records of prior arrests (Mr. Healey had been arrested in the past, specifically in Worcester, MA. (See Affidavit of Patricia Wallis attached as Exhibit "A")); (c) 50.0% of the reported suicide victims were known to the police who detained them (Mr. Healey had been arrested by members of the Worcester Police Department in the past. Id. The Worcester Police also helped Plaintiff search for her Mr. Healey when he was reported missing in the summer of 2001. (See Exhibit "A")); (d) 66.7% of the reported suicide victims were natives of the community in which they were arrested (Mr. Healey was a native of Framingham, Massachusetts and subsequently resided in Worcester, MA (See Exhibit "A"); (e) 96.2% of the reported suicide victims

---

[3] Exhibit "C" is the incident report of Mr. Healey's suicide narrated by Defendant, Francis X. Bartley. This incident report is redacted and Defendants have been uncooperative in supplying Plaintiff with either an unredacted copy of said incident report or the name and last known address of the individual who was held in the cell next to Mr. Healey. In any event, Plaintiff is in the process of locating this individual, who has first hand knowledge of the events which occurred on the night in question.

10

hanged themselves (Mr. Healey died by asphyxiation by hanging himself). (See Exhibit "C" and "D")); (f) 77.4% of the reported suicide victims hanged themselves with articles of clothing which had not been taken away from them (Mr. Healey hanged himself with the draw string from his sweatpants which was left on his person which contributed to his death in direct violation of G.L. c. 40 §36C. *See* Exhibit "C" and "D")); and (g) 83.7% of the reported suicides occurred within four hours of the victims' being placed in lockups (Mr. Healey was arrested at 2:23 AM and placed in a cell at the Worcester Police Department shortly thereafter and committed suicide at approximately 6:24 AM. See Exhibit "C" and "D")). *White v. Town of Seekonk*, 23 Mass.App.Ct. 139 (1986) (where the Massachusetts Court of Appeals reversed the lower courts granting of defendants' Motion for Summary Judgment stating after comparing the facts of White to the statistics of the Special Commission "We are confident, however, that enough appears to compel the conclusion that the plaintiff is entitled to a jury trial on the question whether the Seekonk police knew or should have known that White was a suicide risk..." The Massachusetts Appeals Court's ruling was made even though the police officers of the Town of Seekonk signed affidavits stating that White never made statements about harming himself.) *see also* The Special Commission to Investigate Suicide in Municipal Detention Centers final report (specifically Suicide in Massachusetts Lockups).

Based upon the foregoing factual circumstances, at the time Defendants had taken Mr. Healey into custody on or about September 5, 2001 (See Exhibit "C" and Second

11

Amended Complaint ¶ 14) they knew or reasonably should have known that Mr. Healey was a risk of suicide. (*See* Affidavit of Patricia Wallis, Affidavit of Attorney Joseph Mahaney, and Second Amended Complaint). Despite Defendants' knowledge of Mr. Healey's propensity to commit suicide, the Defendants, upon apprehending Mr. Healey, placed Mr. Healey in a regular detention cell at the Worcester Police Department without the benefit of electronic audio or visual systems and protective coverings on bar structures to prevent injury to himself in violation of G.L. c. 40 §36B. (*See* Exhibit "C"). Healey's cell was not physically or visibly checked by police department personnel as required under a reasonable standard of care pursuant to G.L. c. 40 §36B. *(CITE)*

The foregoing circumstances raise the genuine issue of whether the Defendants knew or reasonably should have known Mr. Healey posed a risk of suicide. Plaintiff contends that Defendants knew or reasonably should have known by evaluating the aforementioned facts that Mr. Healey possessed the tendency to commit suicide. Summary Judgment is especially disfavored where knowledge or state of mind is at issue. *Quincy Mutual Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 86 (1984). The issue of Defendants' knowledge is genuine and one of a material fact, which a jury should be entitled to decide. Thus Defendants' Motion for Summary Judgment should be denied.

D. **DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

As the Supreme Court recently reminded us, in order to decide whether a defendant is entitled to qualified immunity, we must first determine whether (taking the facts in the light most favorable to the plaintiff) a constitutional right was violated, and second, if those facts would demonstrate a violation, we must decide whether the right in

question was clearly established at the time the events took place. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) *see also Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998).

This Court, as an initial matter, must determine whether Plaintiff has alleged facts that would show Defendants conduct violated Mr. Healey's constitutional rights and Plaintiff contends that Defendants conduct has. *Id.* As stated above Defendants knew or should have known that Mr. Healey suffered from mental disabilities, Mr. Healey posed a serious danger to himself, and was a suicide risk. The facts set forth herein support a finding that the Defendants failed to comply with the Massachusetts General Laws on the detention of a detainee with suicidal tendencies. Upon being taken into custody by Defendants Mr. Healey was placed in a detention cell at the Worcester Police Department without the benefit of electronic audio or visual systems and protective coverings on bar structures to prevent injury to himself in violation of G.L. c. 40 §36B. Mr. Healey's cell was not physically or visibly checked by police department personnel as required under a reasonable standard of care pursuant to G.L. c. 40 §36B. The defendants failed to intervene or prevent the suicide of Healey despite having actual notice of Healey's risk of suicide. Mr. Healey was left with items on his person which contributed to his death in direct violation of G.L. c. 40 §36C.

Defendants' failure to comply with the Massachusetts General Laws resulted in a violation of his Fourteenth Amendment rights. The first element of whether a defendant is entitled to qualified immunity is therefore satisfied

Next this Court must determine whether the right in question (Mr. Healey's Fourteenth Amendment right to be secure in his life and person and to proper medical

care while confined pursuant to state authority) was clearly established at the time the events took place. *Saucier* at 200 (2001).

Whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. The right must be clear enough that "a reasonable official would understand that what he is doing violates that right." *Id*. at 202. Although the officer must have knowledge of the right, it is not necessary that a case be "on all fours" with this one for the case to go to a jury. *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir. 1996). Instead, the question we must ask is whether the law provided Shepard with "fair warning" that his conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730 (2002).

Mr. Healey's federally protected right is to be free from deliberate indifference to suicide. This Court should have no doubt that this right was clearly established prior to Mr. Healey's 2001 suicide. *See Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992).

V.   **CONCLUSION**

WHEREFORE Plaintiff respectfully request this Honorable Court deny Defendants' Motion for Summary Judgment as there exist genuine issues of material fact which warrant a jury trial.

                              Respectfully Submitted:
                              Plaintiff,
                              By Her Attorneys:

                              /s/ *Theodore H. Goguen, Jr., Esq.*
                              /s/ *Joseph M. Mahaney, Esq.*

                              Theodore H. Goguen, Jr., Esq.
                              BBO # 196740
                              Joseph M. Mahaney, Esq.
                              BBO # 549042
                              GOGUEN, MCLAUGHLIN, RICHARDS,
                              & MAHANEY, LLP
                              2 Pleasant Street
                              S. Natick, MA 01760
                              (508) 651-1000

Dated: May 31, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon Janet J. McGuiggan, Esquire, Assistant City Solicitor, City of Worcester, Law Department, City Hall, Room 301, Worcester, MA 01608, the attorney of record for the Defendants by first class mail this 31st day of May 2006.

                              /s/ *Theodore H. Goguen, Jr., Esq.*

                              Theodore H. Goguen, Jr., Esq.